**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Octavio Perez, Individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Intellicheck, Inc.<br><br>and<br><br>authID, Inc.<br><br>Defendant. | ) | Case No. ________________________<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

## CLASS ACTION COMPLAINT

Now comes Plaintiff, Octavio Perez ("Plaintiff"), on behalf of himself and all others similarly situated, through counsel, and pursuant to Fed. R. Civ. P. 23, against Defendants, Intellicheck, Inc. ("Intellicheck") and authID, Inc. ("authID") (collectively "Defendants"), to redress and curtail Defendants' unlawful collection, obtainment, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and/or biometric information (collectively referred to herein as "biometric data" and/or "biometrics").

## NATURE OF THE ACTION

1. Intellicheck is a publicly traded identity validation company that performs "know your customer" ("KYC") functions on behalf of its clients, including GoBrands, Inc. d/b/a GoPuff ("GoPuff"), an app-based consumer goods delivery company.

2. Many, if not all, of these KYC functions involve the collection, retention, and disclosure of end users' biometric information through authID (formerly Ipsidy Inc.).

3. Intellicheck uses authID's cloud-based facial recognition and identity verification tools and pays authID a fee per verification performed using authID's cloud-based facial recognition software.

4. Plaintiff began working as a delivery driver for GoPuff out of its Chicago, Illinois warehouse beginning in 2021 and had his biometric information processed by Defendants as part of maintaining his account.

5. As part of this process, and to continue his work for GoPuff, Plaintiff was required to upload: (1) a picture of a valid state-issued identification; and (2) a real-time portrait of his face (a "selfie").

6. GoPuff utilizes Intellicheck's services, which in turn rely on authID's cloud based software, to scan the selfie, create a biometric template of the user's face (including facial geometry scans), and compare it to the photograph on the identification document to confirm a match.

7. This biometric authentication was mandatory for GoPuff drivers, including Plaintiff, to perform their work, ensuring drivers are not subcontracting tasks.

8. Defendants collect, store, possess, obtain, use, and disseminate users' biometric data to enhance their customers' platforms and their own services.

9. Facial geometry scans are unique, permanent biometric identifiers that cannot be changed if stolen or compromised. Defendants' unlawful handling of this data exposes users to serious privacy risks, such as identity theft or unauthorized tracking.

10. The Illinois Legislature enacted BIPA to protect residents' privacy interests in their biometric data. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 20.

11. Courts have analogized privacy interests in biometric data to protections against

trespass. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 624 (7th Cir. 2020).

12. BIPA requires private entities to: (1) inform individuals in writing of biometric collection or storage; (2) inform them in writing of the specific purpose and term; (3) obtain a written release; and (4) publish retention schedules and destruction guidelines. 740 ILCS 14/15(a)-(b).

13. BIPA also prohibits disclosure of biometric data without consent, subject to limited exceptions. 740 ILCS 14/15(d).

14. Biometrics are biologically unique and, once compromised, leave individuals without recourse. 740 ILCS 14/5(c).

15. Defendants violated BIPA by collecting (authID) and disclosing (Intellicheck) biometric data without compliant consent, harming Plaintiff and the Class Members.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000, there are over 100 class members, and minimal diversity exists (Plaintiff is an Illinois citizen; Defendants are Delaware corporations with principal places of business in New York).

18. This Court has personal jurisdiction over Defendants because their biometric practices targeted Illinois residents, including through GoPuff's extensive Chicago operations.

19. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events occurred here, including Plaintiff's biometric scans in Chicago.

## PARTIES

20. Plaintiff Octavio Perez is an Illinois citizen and resident who underwent

Defendants' biometric verification process while working for GoPuff in Chicago.

21. Defendant Intellicheck, Inc. is a Delaware corporation with its principal place of business at 535 Broad Hollow Road, Melville, New York.

22. Defendant authID, Inc. (f/k/a Ipsidy Inc.) is a Delaware corporation with its principal place of business at 670 Long Beach Boulevard, Long Beach, New York.

## FACTUAL ALLEGATIONS

23. Pursuant to an agreement between Intellicheck and GoBrands, Inc. (GoPuff), Intellicheck provides access to its platform for verifying identification documents, including driver licenses, using magnetic stripe, barcode, smart chip, and digital identity information.

24. Intellicheck utilizes authID's biometric products, integrating them into bundled offerings for clients like GoPuff.

25. GoPuff requires drivers like Plaintiff to submit ID photos and selfies via mobile devices, following instructional screens that guide capture of the ID's front, back, and barcode, followed by facial verification.

26. These processes involve automatic capture and processing of biometric data, including facial geometry templates.

27. Users encounter a screen stating: "By clicking/tapping Continue, I agree that I have read and understand the Biometric Policy linked below and that I hereby consent to the collection, transmission, and processing of my biometric data..." The linked policy is Intellicheck's Biometric Information Policy, which makes no mention of authID or its role in collecting or storing biometric data.

28. Intellicheck discloses users' biometric data to authID for processing, and authID performs the actual facial matching and template creation on its servers.

29. Intellicheck resells subscriptions to authID's cloud-based biometric products and services, incorporating them into Intellicheck's offerings for clients such as GoPuff.

30. Intellicheck bundles authID's facial biometric matching services, which operate on authID's Identity as a Service (IDaaS) platform.

31. authID's IDaaS platform is a cloud-hosted system that processes biometric data remotely, requiring the transmission of user-submitted images (e.g., selfies and identification documents) to authID's servers for analysis, template creation, and identity verification. authID provides these server-side services for "per verification" fees paid by Intellicheck to authID.

32. Users capture and submit ID images and selfies via mobile devices. These submissions are not processed solely on Intellicheck's systems; instead, Intellicheck transmits the biometric data to authID's servers for facial liveness detection, biometric template generation, and matching against the ID photo.

33. Intellicheck's agreement with GoPuff is for a cloud-based software as a service (SaaS) platform for identity verification, which necessitates the disclosure of users' biometric data from Intellicheck to authID's servers, where authID performs the core biometric authentication functions.

34. authID's describes its business as delivering identity verification solutions, including facial biometrics, to partners like Intellicheck through cloud-hosted platforms.

35. Therefore, Intellicheck does not independently host or process the biometric verification on its own servers but relies on authID's remote servers, thereby disclosing Illinois residents' biometric data to authID without obtaining BIPA-compliant consent for such transmission or for authID's subsequent collection and possession.

36. Neither Defendant obtains BIPA-compliant consent: authID collects without any

compliant notice or release from users, and Intellicheck discloses without prior compliant authorization.

37. This violates users' privacy rights, causing irreparable harm.

## CLASS ALLEGATIONS

38. Plaintiff seeks to certify a class defined as:

> All individuals in Illinois whose biometric identifiers or biometric information was collected, captured, obtained, stored, used, or disclosed by or through Defendants' integrated biometric verification services provided pursuant to the Reseller Agreement, from five years preceding the filing of this action to the date of judgment.

39. **Numerosity**: Thousands of individuals in Illinois underwent these processes through Defendants' clients, including app-based businesses, retailers, and social media platforms with substantial operations in Illinois, as evidenced by Defendants' public disclosures and client relationships.

40. **Commonality**: Common questions include whether authID collected biometrics without compliant consent and whether Intellicheck disclosed without authorization and whether authID failed to publish a compliant retention policy.

41. **Typicality**: Plaintiff's claims are typical, arising from the same uniform practices applied across Defendants' clients.

42. **Adequacy**: Plaintiff and counsel will fairly represent the Class; counsel are experienced in Class Actions and BIPA litigation.

43. **Predominance and Superiority**: Common issues predominate; a class action is superior to individual suits given small damages and risk of inconsistent judgments.

44. Notice will be provided as required by Rule 23.

## COUNT ONE: VIOLATION OF 740 ILCS § 14/15(b)

**(Against authID Only)**

39. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

40. authID collected Plaintiff's and Class Members' biometric data (facial geometry templates) without: (1) informing them in writing of collection/storage; (2) informing them in writing of purpose/term; or (3) obtaining a written release. 740 ILCS 14/15(b).

41. The Intellicheck consent screen links only to Intellicheck's policy, which omits authID entirely; no authID-specific consent was obtained.

42. Defendants collected, stored, and used Plaintiff's biometric information without receiving BIPA compliant informed consent.

43. As such, Defendants' collection of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

**COUNT TWO: VIOLATION OF 740 ILCS § 14/15(d)**
**(Against Intellicheck Only)**

44. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully set forth herein.

45. Intellicheck disclosed Plaintiff's and Class Members' biometric data to authID without consent or other statutory exceptions. 740 ILCS 14/15(d).

46. Disclosures occurred via Agreement for processing on authID's servers, without users' authorization.

47. This violated BIPA, causing harm.

**COUNT THREE: VIOLATION OF 740 ILCS § 14/15(a)**
**(Against authID Only)**

48. Plaintiff incorporates by reference paragraphs 1 through 38 as though fully set forth

herein.

49. authID was in possession of Plaintiff's and Class members' biometric identifiers and information but failed to develop a publicly available written policy establishing a retention schedule and guidelines for permanently destroying such data when the initial purpose for collection is satisfied or within three years of the last interaction, whichever occurs first. 740 ILCS 14/15(a).

50. This conduct constitutes a violation of BIPA, resulting in harm to Plaintiff and the Class.

**COUNT FOUR:**
**VIOLATION OF 740 ILCS § 14/15(b)**
**(Against Intellicheck Only)**

51. Plaintiff incorporates by reference paragraphs 1 through 50 as though fully set forth herein.

52. Intellicheck collected, captured, and otherwise obtained Plaintiff's and Class Members' biometric data (including facial geometry templates and scans) without first: (1) informing them in writing that a biometric identifier or biometric information is being collected or stored; (2) informing them in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; or (3) receiving a written release executed by Plaintiff or Class Members. 740 ILCS 14/15(b).

53. Intellicheck's process requires users to encounter a screen stating: "I consent to the process collecting and transmitting my biometrics and other data for ID validation," with a link to Intellicheck's Biometric Policy, a checkbox for "I Agree," and options to Decline or Continue. However, this flow fails to comply with BIPA's requirements. It does not inform users in writing that their biometrics are being stored (as opposed to merely collected or transmitted). It provides

only a vague purpose of "ID validation" without specifying the precise scope or manner of use. Critically, it omits any reference to the length of term for which the biometrics will be collected, stored, or used.

54. The linked Biometric Policy similarly fails to cure these deficiencies, providing no indicia to the user that it is a hyperlink, providing no specific details on storage or any defined retention term. Without these mandatory written disclosures, the checkbox and "Continue" button do not constitute a valid signature and written release under BIPA, as users cannot provide informed consent absent the required notices.

55. Intellicheck collected, stored, and used Plaintiff's and Class Members' biometric information without receiving BIPA-compliant informed consent.

56. As such, Intellicheck's collection of Plaintiff's and the Class Members' biometric information was unlawful and in violation of 740 ILCS § 14/15(b).

**WHEREFORE**, individually, and on behalf of the Class Members, Plaintiff prays for: (1) certification of this case as a class action and appointing the undersigned counsel as class counsel; (2) a declaration that Defendant has violated BIPA, 740 ILCS 14/1 *et seq*.; (3) statutory damages of $5,000.00 for each intentional and reckless violation of BIPA pursuant to 740 ILCS 14/20(2), or alternatively, statutory damages of $1,000.00 per violation pursuant to 740 ILCS 14/20(1) in the event the court finds that Defendant's violations of BIPA were not willful; (4) reasonable attorneys' fees and costs and other litigation expense pursuant to 740 ILCS 14/20(3); (5) actual damages; and (6) for any other relief deemed appropriate under the circumstances.

Dated: January 15, 2026

Respectfully submitted,

s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon (*pro hac vice* forthcoming)
SIMON LAW CO.
11 ½ N. Franklin Street
Chagrin Falls, Ohio 44022
Telephone: (216) 816-8696
Email: james@simonsayspay.com